IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| LISA M. PAGEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:04-00084 |
| | ) | JUDGE HAYNES |
| PREMIER MANUFACTURING | ) | |
| SUPPORT SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff, Lisa M. Pagel, a Tennessee citizen, filed this action under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 et seq., and the Tennessee Handicap Act ("THA"), Tenn. Code Ann. § 8-50-103 et seq., against her former employer, Defendant Premier Manufacturing Support Services, Inc. ("Premier"), a Michigan corporation with its principal place of business in Ohio. Plaintiff initially filed this action the Circuit Court for Maury County Tennessee, but the Defendant removed the action under 28 U.S.C. § 1332, the federal diversity statute. The gravamen of Plaintiff's complaint is that Premier wrongfully terminated Plaintiff's employment because of her extensive absence due to injuries she sustained in an automobile accident, and that Premier discriminated against Plaintiff based upon her disability resulting from the accident by terminating her employment.

Before the Court is Premier's motion for summary judgment, (Docket Entry No. 14), contending, in sum: (1) that Plaintiff was not handicapped under the THRA or THA; (2) that Premier did not perceive Plaintiff as being handicapped; (3) that under the Tennessee law, Premier did not owe Plaintiff a duty of accommodation; and (4) that, in the alternative, Plaintiff has presented no evidence of employment discrimination. In response, (Docket Entry No. 19), Plaintiff asserts, in

essence: (1) that Plaintiff was handicapped under Tennessee law; (2) that Premier perceived that Plaintiff was handicapped; (3) that there is a duty of accommodation under Tennessee law; and (4) that material facts exist from which a reasonable jury could conclude that Premier discriminated against Plaintiff based on her disability by terminating her employment.

For the reasons set forth below, the Court concludes that Plaintiff has failed to establish that she is entitled to protection under the THA and THRA because she was not "qualified" for her position at the time of her termination. Accordingly, summary judgment should be granted.

## A. FINDINGS OF FACT[1]

Plaintiff began her employment at Premier in January 1991, and in 1993 was given a training position that included safety training. (Docket Entry No. 25, Defendant's Response to Plaintiff's Statement of Undisputed Facts at ¶ 1; Docket Entry No. 17, Defendant's Appendix, Exhibit A attached thereto, Plaintiff Deposition at 26-27). Throughout her employment, Plaintiff had a very good job record, received merit raises and bonuses every year, and received two consecutive merit awards. (Docket Entry No. 25 at ¶ 3).

At some point during her employment, Plaintiff was given a Premier Employee Handbook. (Docket Entry No. 21, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 1). This handbook "summarizes many of [Premier's] philosophies, policies, and commitment [to its

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986), app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Because there are no material factual disputes, this section constitute findings of fact under Fed. R. Civ. P. 56(d).

2

employees and] also highlights [employees'] responsibilities to Premier." (Docket Entry No. 17, Exhibit B attached thereto, Premier Employee Handbook at 1). On the issue of employees' leaves of absence, the handbook provides:

> While you are on a Leave of Absence (LOA), there is a formal change in your employment status. The approving Manager must complete an Employee Change Notice (ECN) and forward to the People Services Administrator at the corporate office. Payroll and benefits may be affected by LOA. All accrued paid time off (including vacation) will be used on the front end of any leave.
>
> You need to be aware of the following limitations and obligations you incur while on any LOA:
>
> * * *
>
> 3.   No medical LOA can exceed six (6) months (including FMLA entitlement) or length of service, whichever is less.
>
> * * *
>
> 10.  Available vacation pay will be taken upon the initial period of the LOA.
>
> 11.  Any LOA shall be without pay except as specifically provided under the policy guidelines for that particular type of leave.
>
> 12.  Medical, Dental, Life, [and] Long-Term Disability . . . may be continued throughout the period of your LOA. . . .
>
> * * *
>
> 18.  Except as provided in applicable federal, state, or local law, reinstatement cannot be guaranteed to anyone on a LOA.

Id. at 27-30.[2] Plaintiff read the handbook and signed for it on April 13, 1995. (Docket Entry No. 21 at ¶ 2).

On January 16, 2003, Plaintiff was in an automobile accident. Id. at ¶ 4. As a result of this

---

[2] The handbook states further that it "contains no promise of any kind, either express or implied, and does not create any employment rights for you or the company. . . . The company reserves the right to amend and change the guidelines and information contained in this Associate Handbook at its sole discretion and may do so without prior notice." Id. at 5.

3

accident, Plaintiff suffered a ruptured disc in her back, and was unable to sit up for long periods of time, had severe pain in her neck and shoulders, numbness in her arms, was unable to lift objects, and was on pain medications. Id. Plaintiff continued to work until January 28, 2003, although Plaintiff acknowledged that "work[ing] from January 16th until the 28th . . . was very difficult for me." Id. at ¶ 5. As a result of these injuries, Plaintiff was unable to work. Id. at ¶¶ 4-5.

Premier issued to Plaintiff an application for leave of absence, which included a request form for leave under the Federal Family and Medical Leave Act generated by the United States Department of Labor. See Docket Entry No. 17, Exhibit C attached thereto, Leave of Absence application. Plaintiff's application indicated that her leave of absence request was due to "[e]mployee's serious health condition," and requested her leave begin on January 28, 2003 with an end date "unknown at this time." Id. In a letter accompanying the application, Sylvia Alcaraz, Premier's Benefits Director, informed Plaintiff that Premier "will use all accrued paid time (vacation) at the beginning of your leave unless you are on worker's compensation." Id. Plaintiff signed the completed form on February 7, 2003. Id.

Plaintiff's ruptured disc ultimately required spinal fusion surgery in June 2003. (Docket Entry No. 25 at ¶ 6). After the surgery, Plaintiff was informed by her doctor that he had a twenty-five percent (25%) whole body impairment. Id. at ¶ 7. Plaintiff was unable to work during her recovery from surgery, and on or about July 1, 2003, Plaintiff apprised her supervisor at Premier, Debra Johnson, of her 25% impairment. Id. at ¶¶ 8, 21.

On August 5, 2003, Plaintiff was informed by Johnson that her employment had been terminated pursuant to Premier's six-month leave policy as described in the company handbook. Id. at ¶¶ 15-16; Docket Entry No. 21 at ¶ 12. In Plaintiff's State unemployment insurance separation

4

notice, Johnson listed as the grounds of termination that Plaintiff's "medical leave exceeded that allowed by [company] policy." See Docket Entry No. 17, Exhibit C attached thereto, Separation Notice. After her termination, Plaintiff continued to receive disability benefits from Premier. (Docket Entry No. 23, Plaintiff's Appendix, Exhibit A attached thereto, Plaintiff deposition at 65-67).

Plaintiff did not receive clearance from her doctor to return to work until September 5, 2003. (Docket Entry No. 25 at ¶ 7). As of that date, she had lifting and climbing restrictions. (Docket Entry No. 23, Exhibit A attached thereto at 38-39). Plaintiff requested her employment be reinstated, but was turned down. (Docket Entry No. 25 at ¶ 24). Plaintiff was not replaced by another employee. (Docket Entry No. 21 at ¶ 13).

Plaintiff contends that Premier failed to "substitute [Plaintiff's] vacation and sick leave in lieu of her medical leave, or allow her to return to her doctor and request an immediate release, or extend the leave as had been done in the past for other employees." See Docket Entry No. 25 at ¶ 25 (citations omitted). However, Plaintiff presents no proof supporting her contention that Premier made such accommodations for other employees.

In contrast, Premier provides evidence that employees similarly bound by the employee handbook who were not terminated after leaves of absence were neither permitted to use accrued vacation time to extend a leave of absence nor took leaves of absence for six months or more. (Docket Entry No. 18, Debra Johnson Affidavit at ¶¶ 15-17). One coworker, however, was diagnosed with cancer and unable to work. Id. at ¶ 18. He was on a medical leave of absence for seven months. Id. Johnson contends, and Plaintiff does not present evidence to the contrary, that this employee had one extra month of leave by Johnson's "inadvertent mistake", and upon

5

discovering that mistake, Johnson terminated that employee because he had been on leave in excess of six months as allowed under Premier's policy. Id. at ¶ 19.

## B. CONCLUSIONS OF LAW

### 1. Standard of Review

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56© of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to

find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56© standards." Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.' " Emmons

7

v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Prods., 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

8

evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.</u>'

<u>Liberty Lobby</u>, 477 U.S. at 248 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . ."

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d. 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." <u>Webster's Third New International Dictionary</u> (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

9

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and © require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

## 2. Discrimination Based on Handicap

The THA prohibits workplace discrimination based upon an employee's disability. The THA provides, in pertinent part:

> There shall be no discrimination in the hiring, firing and other terms and conditions of employment . . . of any private employer against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.

Tenn. Code Ann. § 8-50-103(a). The THA also applies to the termination of private employees. See Chandler v. Specialty Tires of Am. (Tenn.), Inc., 283 F.3d 818, 823 (6th Cir. 2002) (citing Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 707 (Tenn. 2000)).

Further, the THA "embodies the definitions and remedies provided by the Tennessee Human

11

Rights Act ('THRA')." Barnes, 48 S.W.3d at 705. Thus, the THA and THRA work in conjunction to grant an individual civil cause of action for wrongful discrimination based upon handicap. See Watkins v. Shared Hosp. Servs. Corp., 852 F. Supp. 640, 644 (M.D. Tenn. 1994).

A plaintiff alleging discrimination under the THA must show: (1) that she was qualified for the position; (2) that she was disabled; and (3) that she suffered an adverse employment action because of that disability. Barnes, 48 S.W.3d at 705. The elements of the THA are very similar to those of the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. See Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996). Although Tennessee courts are not bound by federal law, as with claims under the THRA, Tennessee courts do look to federal law for guidance in enforcing claims arising under the THA. Barnes, 48 S.W.3d at 705.

Because the THA does not protect employees whose "handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved[,]" the critical inquiry in this action is whether Plaintiff's injuries prevented Plaintiff from resuming her position with Premier; that is, whether Plaintiff was "qualified" for her position.

The THA does not provide a definition of a "qualified" employee. However, under the ADA, "[t]he term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see also Barnes, 48 S.W.3d at 705 (citing ADA definition of "qualified individual with a disability"). An employee who suffers an injury or illness and is not medically released to return to work is not "qualified" under the ADA. Roberson v. Cendant Travel Servs., Inc., 252 F. Supp. 2d 573, 583 (M.D. Tenn. 2002). Moreover,

the Tennessee Supreme Court requires that "an analysis of the qualifications of an individual alleging discrimination under the THA should focus on the time frame during with the employment decision was made." Barnes, 48 S.W.3d at 705.

Here, Premier made its decision to terminate Plaintiff on August 5, 2003. (Docket Entry No. 25, Defendant's Response to Plaintiff's Statement of Undisputed Facts at ¶ 2). Plaintiff was unable to work while recovering from her June 2003 spinal fusion surgery, and was not released to return to work by her doctor until September 5, 2003, one month after her termination. Id. at ¶¶ 6-8. Thus, Plaintiff was not "qualified" to work at Premier as of the date of her termination.

Plaintiff argues that Premier was required to provide Plaintiff with reasonable accommodations. See Docket Entry No. 23, Plaintiff's Response in Opposition to Summary Judgment at 11-12). However, alike the ADA, the THA does not include a requirement that the employer provide a disabled employee with "reasonable accommodations." Compare Tenn. Code Ann. § 8-50-103(a), with 42 U.S.C § 12112(b)(5). As the Sixth Circuit noted, unlike under the ADA, "[a] determination that an accommodation is required for the employee to perform the functions of the job ends the inquiry under Tennessee law, but does not do so under the ADA." Workman v. Frito-Lay, Inc., 165 F.3d 460, 468 n.9 (6th Cir. 1999). Accord Anderson v. Ajax Turner Co., 1999 WL 976517, at *4 (Tenn. Ct. App. Oct. 28, 1999) (holding that the THA "does not require employers to provide disabled workers with reasonable accommodations") (internal quotation omitted).

According to Plaintiff, however, Tennessee courts do impose a duty of "reasonable accommodation" on an employer under the THA. (Docket Entry No. 20 at 11-12 (citing Barnes, 48 S.W.3d at 705; Perlberg v. Brencor Asset Mgmt, Inc., 63 S.W.3d 390, 395 (Tenn. Ct. App. 2001)).

13

Plaintiff contends that her cited cases establish as "the very crux of the framework for analyzing a handicap discrimination claim" the requirement of reasonable accommodation. Id. at 11. In Barnes, the Tennessee Supreme Court provided a paraphrase of and citation to the ADA definition of a "qualified individual with a disability", but did not separately address the issue of accommodation. Barnes, 48 S.W.3d at 705. In the other case relied upon by the Plaintiff, the Tennessee Court of Appeals, in the context of deciding whether a plaintiff's complaint stated a claim of discrimination under the THA, held that "a claim regarding reasonable accommodation in employment does make sense in the context of a THA claim." Perlberg, 63 S.W.3d at 395.

Upon review of these cases, the Court does not attribute to them the same precedential weight as does Plaintiff the proposition that an employer is required to provide reasonable accommodations to an employee. Nevertheless, even if Plaintiff is correct that the THA does require an employer to make "reasonable accommodations", Plaintiff's claims are still insufficient. Under the ADA, an employer "must make a reasonable effort" to provide reasonable accommodations only if "a qualified individual with a disability has requested [such] a reasonable accommodation. . . . [T]he initial burden of requesting an accommodation [is placed] on the employee. The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for accommodation." Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1046-47 (6th Cir. 1998) (quoting in part 29 C.F.R. app. § 1630.9). Further, the employee must "establish[] that she is capable of performing the essential functions of the job with the proposed accommodation." Roberson, 252 F. Supp. 2d at 582 (citing Monette, 90 F.3d at 1183-84).

Here, Plaintiff presents no evidence that Plaintiff requested any type of accommodation from Johnson or anyone else at Premier prior to her termination on August 5. The portions of Plaintiff's

14

deposition testimony upon which Plaintiff relies as demonstrating her requests for accommodation reflect only that on August 6, 2003, Plaintiff asked Johnson whether she would have still had her job if Johnson had "made a mistake" in the calculation of her vacation and sick leave, and asked Johnson whether she would be able to return to work if she were released from her doctor. (Docket Entry No. 23, Plaintiff's Appendix, Exhibit A attached thereto, Plaintiff deposition at 82, 94). The Court does not construe Plaintiff's statements as "requests" for "reasonable accommodations". Moreover, these statements were made after Plaintiff's termination, and were made approximately one month before Plaintiff was released by her doctor to return to work. Thus, the Court concludes that Plaintiff cannot establish that she requested a reasonable accommodation prior to her termination.

In sum, the Court concludes that Plaintiff has failed to establish that she was a "qualified" employee at the time of her termination as she was physically unable to work. Plaintiff received from Premier disability benefits until September 5, 2003, the date she was released by her doctor to return to work. (Docket Entry No. 23, Plaintiff's Appendix, Exhibit A attached thereto, Plaintiff deposition at 65-67). The Court likewise concludes that even if the THA requires that an employer make reasonable accommodations for an employee, Plaintiff has failed to established that she requested such accommodations prior to her termination. Further, the THA does not protect employees if their "handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved." Tenn. Code Ann. § 8-50-103(a). The proof in this case establishes that Plaintiff was unable to work until September 5, 2003, one month after her termination.

Accordingly, the Court ultimately concludes that Plaintiff has neither established a prima

15

facie claim of discrimination under the THA and THRA, nor is Plaintiff even entitled to the protections of the THA and THRA. In reaching this conclusion, the Court notes that Plaintiff was terminated pursuant to Premier's uniform policy requiring termination after a six month leave of absence. See Docket Entry No. 17, Exhibit B attached thereto, Premier Employee Handbook at 28; and Exhibit C attached thereto, Separation Notice. Such policies in themselves do not run afoul of the ADA, Gantt, 143 F.3d at 1046, and Plaintiff provides no evidence from which a reasonable jury could conclude that this policy was enforced against her differently than as against other employees. Cf. Docket Entry No. 18, Debra Johnson Affidavit at ¶¶ 13-19. For these reasons, Plaintiff's claims fail.

## C. CONCLUSION

For the foregoing reasons, Defendant Premier Manufacturing Support Services, Inc.'s motion for summary judgment (Docket Entry No. 14) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 20th day of July, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge